UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:14-CR-3-GFVT-HAI |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| ISAAC JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

On referral from District Judge Van Tatenhove (D.E. 57), the Court considers reported violations of supervised release conditions by Defendant Isaac Jackson. This is his second revocation.

Judge Van Tatenhove entered a judgment against Defendant in November 2014 for possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). D.E. 40. Defendant received a sentence of 36 months of imprisonment followed by three years of supervised release. *Id.* at 2-3. Defendant began his first supervised release period on December 8, 2017. D.E. 46.

On August 10, 2018, the United States Probation Office ("USPO") reported that on July 9, 2018, Defendant submitted a urine specimen that tested positive for methamphetamine via instant test. Defendant "denied use," and the specimen was sent to Alere Toxicology for confirmation. Alere reported on July 17 that the specimen was untestable. On July 25, 2018, Defendant submitted another urine specimen. He again "denied the use of any substances other than his prescribed medication." But the specimen tested positive for methamphetamine.

At his final revocation hearing on September 5, 2018, Defendant pleaded guilty to unlawful use of a controlled substance and committing the crime of simple possession of methamphetamine. D.E. 51 at 2. He was sentenced to time served, followed by 35 months of supervised release with the added condition that Defendant complete both Phase One and Phase Two of the inpatient treatment program at Lake Hills Oasis, as described by the parties. *See id.* at 8; D.E. 54.

Defendant began his second term of supervised release on September 18, 2018. His conditions were altered in November 2018 to allow him to enroll in a different treatment program, which provided "intensive outpatient" rather than inpatient treatment. D.E. 56. He completed that intensive outpatient program on April 26, 2019.

## I.

On October 24, 2019, the USPO issued a Supervised Release Violation Report ("the Report") that charges five violations. According to the Report, on October 23, 2019, the probation officer met Defendant at a gas station in Williamsburg. During that contact, Defendant

> pulled out what appeared to be a small, tightly wrapped baggie with a white substance from his front, right pocket. At that time, Jackson immediately turned and walked toward an unknown white male who was pumping gas into Jackson's truck. This officer yelled at the defendant several times to "stop" and "come here," but Jackson continued to walk toward the unknown male. Jackson handed the unknown male the baggie, which he (the unknown male) immediately shoved into his pocket. Immediately thereafter, the unknown male hung up the gas pump, got in Jackson's truck, and drove away.

Additionally,

> During the contact with Jackson noted above, Jackson was found to be in possession of a bag of a crystal-like substance believed to be methamphetamine after he pulled the bag from his right cargo pocket. It is noted that the defendant first claimed the substance in the bag was "baking powder." However, he later stated the substance was methamphetamine. An officer of the Williamsburg Police Department, Johnny Fulton, who was present during the contact arrested the defendant and charged him with First Degree Trafficking in a Controlled

Substance, in violation of KRS § 218A.1412, a Class C Felony.  Also found in the defendant's possession was $269 in U.S. currency.

The Report also explains that

> [f]ollowing the observation of the suspected methamphetamine, Officer Fulton informed Jackson that Jackson was under arrest and ordered the defendant to place his hands behind his back.  Upon Officer Fulton making physical contact with Jackson, Jackson pulled away and would not allow the officer to effectuate arrest.  Jackson continued to refuse to place his hands behind his back. Ultimately, Jackson was arrested.  He was charged with a violation of KRS § 520.090, Resisting Arrest, a Class A Misdemeanor.

Finally, the Report notes that, during this contact on October 23, Defendant admitted that he had illegally used oxycodone he had obtained from his mother.  No urine specimen was collected, but Defendant signed an admission form stating he used one oxycodone tablet that was not prescribed to him on October 20, 2019.

On January 27, 2020, the USPO released an Addendum to the report that did not include any new violation charges.  The Addendum states:

> In regard to Violation Nos. 4 & 5, on January 23, 2020, Whitley County District Court case number 19-F-349 was dismissed.  The undersigned contacted Williamsburg Police Department, Chief Wayne Bird, who advised that the charge of Trafficking in a Controlled Substance – 1st Degree will be presented to the Whitley County Grand Jury at a future date for indictment, but has not yet occurred.

Thus, during these proceedings, Defendant has been subject to a potential state prosecution for the same conduct underlying Violations #4 and #5.

Based on Defendant's admission to using oxycodone without a prescription, Violation #1 in the Report charges a violation of the condition that prohibits unlawful possession of a controlled substance and the condition that prohibits unlawful use of a controlled substance. This is a Grade C violation.

Also based on Defendant's oxycodone use, Violation #2 charges a violation of the condition requiring that Defendant not commit another federal, state, or local crime. Noting the Sixth Circuit's decision that use of a controlled substance includes possession and Defendant's prior drug conviction, the report characterizes Defendant's oxycodone use as a violation of 21 U.S.C. § 844(a), simple possession of oxycodone, a Class E felony. This is a Grade B violation.

Violation #3 charges a violation of the condition that requires Defendant to follow the instructions of his probation officer. During the October 23 contact, Defendant failed to obey when the probation officer "yelled at the defendant several times to 'stop' and 'come here.'" Instead, Defendant proceeded to hand the "small, tightly wrapped baggie with a white substance" to the "unknown male," who quickly drove away in Defendant's truck. This is a Grade C violation.

Violation #4 charges a violation of the condition requiring that Defendant not commit another federal, state, or local crime. This Violation is based on Defendant's state charge of violating KRS § 218A.1412, first-degree drug trafficking. Some discussion is in order concerning the grade of this Violation.

The Report charges the § 218A.1412 first-degree trafficking as a Class C Felony and therefore a Grade A violation. Relevant to this charge, the Guidelines Define a Grade A violation as "conduct constituting a federal, state, or local offense punishable by a term of imprisonment exceeding one year that . . . is a controlled substance offense." USSG § 7B1.2. Application Note 3 to this Guideline states that "controlled substance offense" is defined in § 4B1.2. Section 4B1.2 defines a controlled substance offense as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession

of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

USSG § 4B1.2(b).  In order to qualify as a controlled substance offense (and therefore a Grade A violation), Defendant's conduct must have at least involved "intent to manufacture, import, export, distribute, or dispense" the controlled substance.

As will be explained below, if Defendant committed a Grade A violation, his Guidelines Range would be 30-37 months, but effectively a flat 24 months based on the statutory two-year cap.  However, if his most serious violation is Grade B, his Guidelines Range would be 18-24 months.

As his state E-Courts docket makes clear (and as acknowledged by both parties at the final hearing), Defendant was charged with first-degree trafficking, first offense, of two grams or more of methamphetamine.  Section 218A.1412 states that a Class C felony is committed when the defendant "knowingly and unlawfully traffics in . . . (2) grams or more of methamphetamine."  The Kentucky Code defines "traffic" as "to manufacture, distribute, dispense, sell, transfer, or possess with intent to manufacture, distribute, dispense, or sell a controlled substance."  KRS § 218A.010(56).

At the final hearing, Defendant pleaded guilty to Violation #4, but he refused to stipulate to trafficking.  He declined to admit that he had the intent to distribute the methamphetamine. Instead, he admitted possessing methamphetamine and that the methamphetamine weighed more than two grams.[1]  Defendant's limited admission was understandable in light of his anticipated state prosecution for trafficking.  Of course, all the admissions were made in the context of the preponderance-of-the-evidence standard applicable to the revocation proceedings.

---

[1] The government stated at the final hearing that the entire package was found to weigh 6.7 grams.

Defendant's lack of intent to distribute affects his Guidelines calculation. Absent intent to distribute, his state drug crime, though a felony, would not qualify as a controlled substance offense. It would therefore be another Grade B violation, *i.e.*, "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year." Possession of methamphetamine constitutes first-degree possession of a controlled substance under KRS § 218A.1415(1)(c). This is a Class D felony with a maximum incarceration term of three years. *Id*. § 1415(2).

Essentially, Defendant stipulated to a lesser-included offense. He admitted he committed first-degree possession but did not admit to first-degree trafficking. The government, at the final hearing, stated this stipulation was acceptable, and acknowledged that Defendant's most serious violations going forward would be Grade B violations, with a Guidelines Range of imprisonment of 18 to 24 months.

Finally, Violation # 5 charges another violation of the condition requiring that Defendant not commit another federal, state, or local crime. This violation is based on Defendant's charge of resisting the arrest attempt of Williamsburg Police Department Officer Fulton, in violation of KRS § 520.090, a Class A misdemeanor. This is a Grade C violation.

The Court conducted an initial appearance pursuant to Rule 32.1 on January 27, 2020. D.E. 61. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. *Id*. At the initial appearance, the United States made an oral motion for interim detention; defense counsel did not argue for release. *Id*. The Court found that detention was appropriate in light of the heavy release burden under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a). *Id.*

At the final hearing on February 7, 2020, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 62. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all five violations, including the lesser violation as to Violation #4. *Id*. Defendant was sworn. He admitted he used the oxycodone he obtained from his mother. He admitted disobeying his probation officer and resisting arrest by Officer Fulton. He admitted possessing more than two grams of methamphetamine. Although he agreed that the government was likely to prove by a preponderance of the evidence that he had the intent to distribute methamphetamine, Defendant (as discussed above) did not admit distribution or intent to distribute. Because Defendant admitted the factual basis for the violations (including a lesser-included violation on Violation #4), the government established all five violations under the standard of 18 U.S.C. § 3583(e).

## II.

Revocation in this case is mandatory because Defendant possessed a controlled substance. 18 U.S.C. § 3583(g)(1). The Guidelines also recommend revocation upon a Grade B violation. USSG § 7B1.3(a)(1).

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to possession of a firearm by a convicted felon. *See* 18 U.S.C. § 922(g)(1). This is a Class C felony. *See* 18 U.S.C § 3559. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39

(6th Cir. 2007). As previously discussed, although Violation #4 charges a Grade A violation, the parties agreed that Defendant could stipulate to a lesser-included violation that resulted in a Grade B classification. Under § 7B1.1, Defendant's conduct in Violations #1, #3, and #5 qualify as Grade C violations. Defendant's conduct in Violations #2 and #4 qualify as Grade B violations. Given Defendant's Criminal History Category of V (the category at the time of the conviction in this District) and Grade B violations,[2] Defendant's range, under the Revocation Table of Chapter 7, is 18 to 24 months.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." 18 U.S.C. § 3583(h). Given the nature of Defendant's convictions, pursuant to 18 U.S.C. §§ 922(g)(1) and 3583(h), Defendant would be eligible for 36 months of additional supervised release. However, Defendant was previously revoked and sentenced to time served, which amounted to approximately 27 days. Accordingly, the available supervised release on this matter totals 35 months and three days, minus any term of imprisonment imposed on this revocation. *United States v. Brown*, 639 F.3d 735, 737-38 (6th Cir. 2011).

### III.

At the final hearing, the parties presented a joint recommended sentence of revocation with 24 months of incarceration, with no additional supervised release to follow. Even with the change from a Grade A to Grade B violation, the revocation sentence is within the Guidelines Range.

---

[2] *See* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

The government argued that a top-of-the-Guidelines sentence was supported by the facts. Most critically, the breach of trust was severe. Defendant was revoked for drug use and possession in 2018. He received a lenient sentence of time-served and was provided an intensive outpatient treatment program. Yet, discouragingly, Defendant has continued to use and possess drugs illegally. That he committed two state crimes and failed to obey his probation officer aggravates even this discouraging breach of the Court's trust.

Even worse, the government argued, Defendant's methamphetamine use takes him "right back where we started" before his arrest on the underlying charges. The government noted that, according to the PSR, Defendant was stopped by law enforcement while driving an ATV on the highway. There was meth in his pocket, and he fled. Here, the Court is again confronted with meth use and resisting arrest.

The government pointed out that Defendant received a lenient sentence at his prior revocation. Yet this was counterbalanced by his upward variance in the underlying sentence. The government considered the only factor weighing in Defendant's favor to be his acceptance of responsibility by stipulating to the violations.

The government argued the above factors make Defendant a bad candidate for deterrence. Incarceration, the government said, is all we have left to provide deterrence and protect the public. Accordingly, the government argued for no additional supervision. The government warned Defendant that if they cross paths again, he would not receive lenient treatment.

The defense took little issue with the government's arguments. But the defense made two requests. The first was that Defendant be assigned to FMC-Lexington on account of his COPD and other breathing issues. Previously, Defendant had been housed at FCI Beckley in

West Virginia.  The Court denied this request but agreed to recommend that Defendant's medical

needs be assessed by the BOP and that he be placed in an appropriate facility.

Second, the defense requested that Defendant be given credit for the time he spent in jail

between October 29, 2019, and his transfer to federal custody on January 23, 2020.  The defense

explained that Defendant was arrested on the Whitley County case on October 23.  He appeared

in Court on October 24 and October 28.  He posted bond on October 29.  But for some reason,

Defendant was not released nor did he go into the Marshals custody on the detainer in this case.

Instead, he remained in jail until the state charges were dismissed on January 23.  Only then did

he go into the Marshals' custody.  Defendant was concerned, in light of this unusual posture, that

his time from October 29 to January 23 would not be credited anywhere.  He asked for an order

that that time period be counted as if he was being detained on the federal detainer.  The defense

admitted that Defendant would have an argument in state court that the time could be counted in

any future state sentence.  The government argued that the BOP performs the calculations and

does not generally accept recommendations from the Court.  Both sides agreed that the BOP

would likely ignore any recommendation—the sentencing credit would have to be accomplished

through court order.  The Court found that, in light of the circumstances, including Defendant's

serious criminal history, there was no compelling reason to alter the normal mechanics of

sentence calculation.

Defendant addressed the Court and apologized to Officer Greiwe, who he considers a

"fine person."

## IV.

The Court recommends adopting the jointly recommended disposition of revocation with

24 months of imprisonment, with no supervised release to follow.

The determine an appropriate sentence, the Court has evaluated the entire record, including the Report and Addendum and accompanying documents and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the § 3553 factors imported into the § 3583(e) analysis.

The first factor concerns the nature and circumstances of Defendant's underlying conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). According to the PSR, Defendant was arrested in July and August of 2013 and charged in state court with, among other things, manufacturing and trafficking methamphetamine. PSR ¶¶ 1-2. While being interviewed, he admitted killing a deer with a rifle and admitted possessing a .22 caliber handgun, which he "pulled" on someone in 2013 who was "making advances toward Jackson's girlfriend." *Id*. ¶ 8. In March 2014, he was transferred to federal custody to face the felon-in possession charge. *Id*. ¶ 3. Defendant has a history of dangerous criminal conduct associated with methamphetamine, including the underlying conviction. Another aspect of Defendant's conviction is that his 36-month sentence constituted an upward variance from his Guidelines Range of 27 to 33 months. *See id*. ¶ 76.

Concerning his history and characteristics, Defendant was assigned Criminal History Category V, a circumstance which factors into his Guidelines range. According to his PSR, Defendant "recalled using methamphetamine from approximately 2012 through 2013" and stated he used it "on the weekends." PSR ¶ 65. Defendant "stated he has probably tried or used every drug but indicated he has not used many drugs in the past ten or twelve years." *Id*. ¶ 66. He told the USPO that he received substance abuse treatment from Crossroads in 2000, but no further details are provided. *Id*. ¶ 67. Of course, Defendant's release was revoked in 2018 for

methamphetamine use. And upon release he completed an intensive outpatient program. But neither the revocation nor the program were successful in keeping Defendant off drugs and out of trouble.

The Court must also consider the need to deter criminal conduct and protect the public. As the government noted, treatment and supervision were not successful. Defendant has continued to use drugs and commit crimes, including resisting the orders of law enforcement. Incarceration is the only effective way to induce compliance with the law and protect the public. This warrants a sentence at the top of the Guidelines Range. Further supervision would be a waste of resources.

Another sentencing factor concerns the need for further education and treatment. This factor was given great weight in 2018, but it failed to lead to a law-abiding lifestyle. It is no longer a driving factor in this case.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). Here, this is Defendant's second violation. Defendant used oxycodone and was caught in possession of over two grams of methamphetamine. He committed the crimes of resisting arrest and illegal drug possession. And he disregarded clear commands from his probation officer. The breach of trust here is severe.

The remaining factor is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence.

## V.

Based on the foregoing, the Court **RECOMMENDS THAT:**

(1)     Defendant be found guilty of all five Violations.  As to Violation #4, Defendant admits the lesser-included violation of first-degree methamphetamine possession, a Class D felony under Kentucky law, a Grade B violation.

(2)     Defendant's release be revoked, with a term of imprisonment of 24 months.

(3)     No additional supervised release to follow.

(4)     The BOP assess Defendant's medical needs and he be placed in a facility appropriate to those needs.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i).  As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Judge.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record.  Any waiver should comport with the Court's standard waiver form, available from the Clerk.  Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.  If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 11th day of February, 2020.

Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**